UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

CANDIE HAILEY MEANS,

                                  Plaintiff,

        -against-

CITY OF NEW YORK and CORRECTIONS OFFICER
WARREN,CORRECTIONS OFFICER CAPTAIN MORGAN,
CORRECTIONS OFFICER MOTT, CORRECTIONS OFFICER
CAPTAIN MCKENZIE, CORRECTIONS OFFICER WATSON,
CORRECTIONS OFFICER CABA, CORRECTIONS OFFICER
ELLIS, CORRECTIONS OFFICER TERRI, CORRECTIONS
OFFICER CAPTAIN BRISTOL, CORRECTIONS OFFICER
CAPTAIN MCCORMICK, CORRECTIONS OFFICER CAPTAIN
NEGRON, and JOHN and JANE DOES 1 through 10,
individually and in their official capacities, (the names John and
Jane Doe being fictitious, as the true names are presently unknown),

                                  Defendants,

--------------------------------------------------------------------------------X

**AMENDED
COMPLAINT**

17 CV 5374 (SHS)

<u>Jury Trial Demanded</u>

      Plaintiff CANDIE HAILEY MEANS, by her attorneys, The Cochran Firm, complaining

of the Defendants, respectfully alleges as follows:

**<u>Preliminary Statement</u>**

      1.     Plaintiff brings this civil rights action for compensatory damages, punitive

damages and attorney's fees pursuant to 42 U.S.C. §§1983 and 1988 for violations of her civil

rights, as said rights are secured by said statutes and the Constitutions of the State of New York

and the United States.

      2.     This action arises from a chain of horrifying events that began when Plaintiff was

incarcerated at Rikers Island while awaiting trial, and held in solitary confinement for three

years.  From the time of her incarceration in February 2012 to the time of her release after her

acquittal at trial, Plaintiff, a mentally ill inmate whose history was known to the Defendants, was

sexually abused and assaulted numerous times and attempted suicide approximately one hundred times while in custody, including by drinking bleach and hair remover, by cutting her wrists, attempting to electrocute herself, hanging herself, overdosing on medications, and repeatedly bashing her head into a wall. Nevertheless, Defendants continued to deny Plaintiff proper medical treatment and care, and proper accommodation for her disabilities. Instead, Defendants subjected her to cruel, degrading and inhumane treatment, fabricated disciplinary charges against her and kept her in the deplorable conditions of their solitary confinement holding areas. In addition, New York City Department of Corrections ("DOC") officers would frequently alert its PROBE team – corrections officers who wear riot gear, including helmets and face shields – to respond to her cell, at which time they would use excessive force against her, sexually assault her, and then either fail to report what transpired or prepare false or misleading reports.

3.      Plaintiff now seeks redress against the DOC employees who negligently and recklessly disregarded her serious medical needs, and against those who assaulted her or stood by and failed to intervene, their supervisors, and the City of New York.

## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

5.      Jurisdiction is found upon 28 U.S.C. §§1331, 1343 and 1367.

## VENUE

6.      Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that Defendant City of New York is located, and a substantial part of the events giving rise to the claim arose, within the confines of the Southern District of New York.

2

**JURY DEMAND**

7.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38 (b).

**PARTIES**

8.      Plaintiff CANDIE HAILEY MEANS is a thirty-four year old African-American woman currently residing in Kings County.

9.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

10.      Defendant CITY OF NEW YORK maintains the New York City Department of Correction (hereinafter referred to as "DOC"), a duly authorized public authority and/or correction department, authorized to perform all functions of a correction department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

11.      That at all times hereinafter mentioned, Defendant Corrections Officer Captain Morgan (hereinafter referred to as "Morgan") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

12.      That at all times hereinafter mentioned, Defendant Corrections Officer Mott, shield #15656 (hereinafter referred to as "Mott") was a duly sworn corrections officer and was acting under the supervision of DOC and according to her official duties.

13.      That at all times hereinafter mentioned, Defendant Corrections Officer Captain Bristol, (hereinafter referred to as "Bristol") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

14.      That at all times hereinafter mentioned, Defendant Corrections Officer Captain McKenzie, (hereinafter referred to as "McKenzie") was a duly sworn corrections officer and was

3

acting under the supervision of DOC and according to her official duties.

15.    That at all times hereinafter mentioned, Defendant Corrections Officer Captain McCormick, (hereinafter referred to as "McCormick") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

16.    That at all times hereinafter mentioned, Defendant Corrections Officer Captain Negron, (hereinafter referred to as "Negron") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

17.    That at all times hereinafter mentioned, Defendant Corrections Officer Watson (hereinafter referred to as "Watson") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

18.    That at all times hereinafter mentioned, Defendant Corrections Officer Caba, (hereinafter referred to as "Caba") was a duly sworn corrections officer and was acting under the supervision of DOC and according to her official duties.

19.    That at all times hereinafter mentioned, Defendant Corrections Officer Ellis, (hereinafter referred to as "Ellis") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

20.    That at all times hereinafter mentioned, Defendant Corrections Officer Terri, shield #6054, (hereinafter referred to as "Terri") was a duly sworn corrections officer and was acting under the supervision of DOC and according to his official duties.

21.    That at all times hereinafter mentioned, the individually named Defendants, JOHN AND JANE DOES 1 through 10, were duly sworn correction officers and other employees of said department and were acting under the supervision of said department and according to their official duties.

4

22.     That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or purportedly under rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

23.     Each and all of the acts of the defendants alleged herein were done by said Defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

## FACTS

24.     On or about February 12, 2012, Plaintiff was arrested for allegedly stabbing a four-year old girl.  She proclaimed her innocence and pled not guilty to the charge of attempted murder.  Unable to afford bail, Plaintiff was held at Rikers Island Correctional Facility to await trial for three years.

25.     Plaintiff was held at Rikers Island Rose M. Singer Center ("RMSC") until her acquittal at trial in May 2015.

26.     As of Plaintiff's initial medical screening on Rikers Island, Defendants were aware of her history of mental illness, including her diagnosis of depression and she was classified as an inmate requiring mental observation. Defendants were clearly on notice that Plaintiff was depressed and suicidal.

27.     Despite their knowledge of Plaintiff's mental illness, Plaintiff was moved from general population to solitary confinement on April 5, 2012. Plaintiff remained in solitary confinement until May 1,  2015.

28.     Plaintiff's time in solitary confinement was directly caused by the Defendant corrections officers John and Jane  Does #1-10, who routinely falsified disciplinary reports, and

fabricated inmate infractions thereby extending Plaintiff's stay in solitary.

29.     During the course of her incarceration, Plaintiff was assaulted by Defendant corrections officers on many occasions.

30.     In or about October 2014, in RMSC Building 8A, Defendant Corrections Officer Warren, and the PROBE team responded to Plaintiff's cell after a suicide attempt. During this encounter, Defendant Warren stuck his fingers in Plaintiff's vagina and anus while she was being held down by other John and Jane Doe officers. During the sexual assault, Plaintiff screamed out "Help! They are raping me!" She was removed from the area and assessed by a doctor and a nurse and then transported to Elmhurst Hospital for examination. The sexual assault was reported to the Inspector General's Office, which declined to pursue any disciplinary action against the officers.

31.     On or about October 18, 2014, when Plaintiff asked not to take her jumper off in front of a male officer, Defendant Captain McKenzie, Defendant Corrections Officer Watson, Defendant Corrections Officer Caba, and Defendant Corrections Officer Ellis used excessive force on Plaintiff inside her cell. One or more of these Defendants banged her head into the wall multiple times and battered her body. As a result of this incident, Plaintiff suffered injuries to her back, welts on her face, scratches to her body, swelling to her lip, and permanent scarring on her forehead. Upon information and belief, a Use of Force Report was prepared by an officer, however, Plaintiff was not taken to a hospital for examination and DOC refused to take photographs of her injuries.

32.     On or about February 25, 2015, an unknown female captain corrections officer slammed Plaintiff's head on the floor and into a door of a court attorney booth at Rikers Island.

Plaintiff suffered contusions and abrasions to her face and body.

33.    In or about February 2015, in the RMSC Visit Area, while Plaintiff was waiting for Defendant Captain Morgan to escort her back to her cell, she asked that she be allowed to wait for him in an area that was within the view of surveillance cameras rather than in one of the well-known blind spots. Defendant Morgan then used retaliatory and excessive force against her by punching her in the head several times and then putting his finger(s) in her anus.  Plaintiff immediately reported the assault and sexual abuse when she was taken to the clinic to get her injuries treated. This incident was also reported to the Inspector General's Office.

34.    In addition to the foregoing, during the course of her confinement,  Plaintiff was routinely subjected to sexual abuse by Defendant Corrections Officer Terri who would regularly fondle her buttocks and genitalia while handcuffing her to take her out of her solitary  cell. Defendant Terri did this to other female inmates as well and on one such occasion an inmate screamed out while he was assaulting her and Defendant Terri choked her until she stopped. Plaintiff reported Defendant Terri's unlawful sexual touching to his supervisor, and for a brief time Defendant Terri was not permitted to handcuff Plaintiff.  Other John Doe officers would also touch Plaintiff in a sexual manner while handcuffing her, or pretending to handcuff her.

35.    Plaintiff was so fearful of said sexual abuse that she began to smear feces on herself so that Defendant corrections officers would not touch her.

36.    On or about April 17, 2015, Defendant Captain McCormick and Defendant Captain Negron assaulted Plaintiff and caused an injury to her right shoulder when she asked to use the bathroom.

37.    During the course of her incarceration, and as a direct result of her treatment by Defendant corrections officers while in solitary confinement, Plaintiff attempted suicide

7

approximately one hundred (100) times, including, eight such suicide attempts which necessitated psychiatric hospitalization at Elmhurst Hospital.

38.     Plaintiff tried to kill herself in several different ways, including but not limited to, drinking bleach, swallowing hair remover, trying to drown and/or electrocute herself in the toilet, banging her head against the cell wall, hanging herself, cutting her wrists and overdosing on medications.

39.     On or about May 21, 2014, Plaintiff attempted suicide by cutting her wrists with the sharp end of a toothpaste tube.  Corrections Officer Brad witnessed this suicide attempt and responded by spraying Plaintiff in the face with a chemical agent.

40.     On or about September 4, 2014, Plaintiff attempted suicide by repeatedly bashing her head into a wall.  Corrections Officer Sanchez witnessed this suicide attempt and responded by placing Plaintiff in a control hold.

41.     On or about February 13, 2015, Plaintiff attempted suicide by cutting her wrists . Corrections Officer Smith witnessed this suicide attempt and responded by placing Plaintiff in a control hold.

42.     Defendant Captain Bristol witnessed at least one of Plaintiff's suicide attempts when she swallowed an overdose of pills. Plaintiff was transported to Elmhurst hospital for treatment.

43.     After said suicide attempts, plaintiff was inexplicably sent back to solitary confinement sometimes under the condition of being on 'suicide watch'.

44.     While on supposed suicide watch, Plaintiff attempted suicide multiple times, including by cutting her wrists with a toothpaste tube, broken combs, broken lightbulbs, pencils,

and forks.

45.     Notwithstanding that the City, upon information and belief, through its employees and agents, was aware and otherwise on notice that Plaintiff was under mental observation and/or had a history of suicide attempts and/or was suicidal, New York City Corrections Officers negligently, recklessly, and otherwise unlawfully provided Plaintiff, with materials and instruments, including bleach, hair remover, and sharp objects that could be used by Plaintiff to harm herself.

46.     The City knew or should have known that the Plaintiff should not have been given potentially dangerous materials, or otherwise left without supervision during the time that the City's employees knew that plaintiff had such dangerous materials and instruments in her possession.

47.     As a direct result of the City's illegal conduct, the Plaintiff attempted to take her life by cutting her wrists with the City's materials, and drinking bleach and hair remover that the individually-named Defendants provided, causing the Plaintiff to require extensive medical treatment, and to suffer severe and permanent injuries, pain, scarring and mental anguish.

48.     This would not have happened but for the wrongful conduct of the individually-named Defendants and the City in deliberately and/or negligently disregarding plaintiff's serious medical needs.

49.     Despite defendants' knowledge of Plaintiff's psychiatric history and of the above-described events, Plaintiff was deprived of necessary medication and denied proper access to, and treatment from mental health staff.

50.     When Plaintiff was on suicide watch, she was forced to remain in her cell, allowed only to wear her bra and panties.

51.     During her time in solitary confinement, Plaintiff was deprived meals, showers, family visits and was denied outdoor recreation time by Defendant corrections officers John and Jane Does #1-10.

52.     During the course of her incarceration, namely while in solitary, Plaintiff was denied the opportunity to bathe by corrections officers John a n d  J a n e  Does #1-10.   On one occasion, Plaintiff was menstruating and Defendant Corrections Officer Mott, shield # 15656, refused to provide sanitary napkins for three days, or allow her to bathe. Plaintiff spent those days with her legs and groin area visibly covered in blood. Plaintiff had to rip her jumpsuit and use the cloth as a means to clean herself.

53.     At various times during her incarceration at Rikers Island, Defendants confined Plaintiff to punitive solitary confinement units for mentally ill inmates, including the Mental Health Assessment Unit for Infracted Inmates ("MHAUII"), a notoriously inhumane housing unit that has been the subject of news stories that resulted in city officials admitting that "extended punitive segregation can be particularly harmful to mentally ill inmates."[1]

54.     Defendants have engaged in a pattern and practice of punitive segregation and excessive force by assaulting and placing Plaintiff and other mentally ill inmates in solitary confinement for prolonged and excessive periods of time, which has resulted in severe psychological and physical harm.

55.     The conditions in solitary confinement were so filthy and inhumane that on one occasion there was an infestation of flies and maggots in Plaintiff's cell. Plaintiff was bitten in the face so badly by the flies that she was sent for medical treatment. As a result, Plaintiff

---

[1] Statement by NYC Health Commissioner Thomas Farley in January 2014.
https://www1.nyc.gov/assets/doc/downloads/press-release/jan6-2014.pdf.  See also
http://www.huffingtonpost.com/2014/08/05/rikers-island-_n_5649389.html

suffered permanent facial scars.

56.     Plaintiff was brought to Bronx County Criminal Count to appear in her criminal matter approximately thirty times. On said court dates, Plaintiff was shackled by the hands and feet, and placed on a bus for transport to Rikers Island.

57.     On or about October 6, 2014, the Bronx Court ordered a CPL Article 730 examination of Plaintiff to determine if she was mentally fit to stand trial. That examination and its accompanying report determined that Plaintiff had first undergone psychiatric treatment in 2010, and that while incarcerated at Rikers Island she had attempted suicide multiple times. In fact, at the time of the examination, her arm was still bandaged from another suicide attempt.

58.     Plaintiff was subjected to full body strip searches by Defendant corrections officers John and Jane Does #1-10, on hundreds of occasions while incarcerated for this case, particularly when being transported to or from Rikers Island for court appearances or for medical care.

59.     On many occasions in and about March 2015 and April 2015, Plaintiff had mandatory pre-trial appearances and trial days but Defendant correction officers John and Jane Does and their supervisors refused her access to the Court and prevented her from appearing at many Court hearings by falsely claiming that they could not find her court clothes and/or that she refused to appear.

60.     On another occasion in and about March 2015 and April 2015 when DOC actually transported Plaintiff to the Bronx County courthouse for a proceeding, Defendant officers on the PROBE team, John and Jane Does, used excessive force on her in the bullpen, causing her to suffer lacerations and scratches to her forehead, back and knees that required

immediate transport to Lincoln Hospital Center for medical care and caused her to miss more than one day of her scheduled trial.

61.     On May 1, 2015, a jury in Bronx Supreme Court acquitted Plaintiff of any wrongdoing. The charges were dismissed.

62.     However, despite the charges being dropped, Plaintiff was inexplicably sent back to Rikers Island for processing and was not released from custody until May 2, 2015.

63.     As a result of her physical and mental abuse sustained while incarcerated under solitary confinement Plaintiff suffered irreparable psychiatric harm.

64.     As a result of being incarcerated, Plaintiff's children were taken from her in that she either lost custody of them, or was unable to regain custody of them.

65.     As a result of being in solitary, Plaintiff suffered such psychological damage that she was rendered disabled by the Social Security Administration.

66.     As a result of her imprisonment and stay in solitary confinement, Plaintiff developed scoliosis for which she required physical therapy.

67.     As a result of her imprisonment, plaintiff suffered tooth decay from not being provided adequate dental care.

68.     As a result of her imprisonment and stay in solitary confinement, Plaintiff's psychiatric harm has worsened.  In June 2015, Plaintiff was diagnosed with several psychiatric symptoms including a fear of being in contact with people, a sense of hopelessness, insomnia, anxiety, depression, and suicidal ideation.  In July 2015, Plaintiff was hospitalized for suicidal ideation with a plan to jump in front of a train. At that time she was determined to be permanently disabled by the Social Security Administration.

69.     All of the above occurred while other employees, including the individually-named Defendants, of Defendant City failed to intervene in the illegal conduct described herein.

70.     All of the above occurred as a direct result of the unconstitutional policies, customs and/or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees.

71.     As a result of the foregoing, Plaintiff CANDIE HAILEY MEANS sustained, *inter alia*, serious physical injuries and emotional distress, along with deprivation of her constitutional rights.

## AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

72.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "71" with the same force and effect as if fully set forth herein.

73.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under the color of state law.

74.     All of the aforementioned acts deprived Plaintiff CANDIE HAILEY MEANS of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

75.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as corrections officers, with the entire actual and/or apparent authority attendant thereto.

76.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as corrections officers, pursuant to the customs, usages, practices,

13

procedures, and the rules of the CITY OF NEW YORK and DOC, all under the supervision of ranking officers of said department.

77.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.  As a result of Defendants' conduct, plaintiff was injured, and is entitled to damages.

### AS AND FOR A SECOND CAUSE OF ACTION
(Deliberate Indifference to Serious Medical Needs under 42 U.S.C. § 1983)

78.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "77" with the same force and effect as if fully set forth herein.

79.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that was deliberately indifferent to Plaintiff's serious medical needs by disregarding an excessive risk to the Plaintiff's health or safety, which is forbidden by the Constitution of the United States.  As alleged previously, Plaintiff was provided with instruments and materials that were known risks and dangerous to those prisoners who were suffering from mental illness and/or suicidal.

80.     As a result of Defendants' deliberate indifference, Plaintiff sustained injuries and is entitled to damages.

### AS AND FOR A THIRD CAUSE OF ACTION
(Violation of §202 of the Americans with Disabilities Act)

81.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "80" with the same force and effect as if fully set forth herein.

82.     Plaintiff suffers from a mental illness that includes depression and a compulsion to suicide - a paradigmatic instance of inability to care for oneself.  Accordingly, Plaintiff

14

qualifies as a person with an impairment that substantially limits one or more of her major life activities, or in the alternative as an individual with a record of such impairment. Her mental illness therefore constitutes a protected disability under the ADA.

83.     The above-described conduct amounted to discrimination against Plaintiff that violated §202 of the Americans with Disabilities Act, which provides that "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

84.     The City of New York, through its DOC, is covered by the provisions of the Americans with Disabilities Act.

85.     Defendant DOC's intentional or otherwise deliberate refusal to accommodate the needs of Plaintiff by, among other things, failing to ensure her safety by either denying her the use of materials that could be used to harm herself, or otherwise closely supervising Plaintiff while in possession of such materials, in light of their knowledge of her mental illness and suicide attempts and history, violated the American with Disabilities Act of 1990.

86.     Instead of accommodating Plaintiff's needs, DOC denied her services and programs available to others that could have protected her from the injuries inflicted on her. The failure to accommodate Plaintiff's disability was intentional and/or deliberately indifferent to Plaintiff's rights under Title II of the ADA and was the proximate cause of her injuries.

87.     Specifically, Plaintiff could have benefitted from monitoring by prison staff and/or peers. The Defendants provided no supervision of Plaintiff whatsoever once they gave her potentially deadly materials.

88.     As a consequence of Defendant's discriminatory treatment and lack of

15

accommodation, Plaintiff suffered a lack of access to appropriate supervision, thereby causing

Plaintiff to sustain serious injuries.  Plaintiff is thus entitled to damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Violation of §504 of the Rehabilitation Act)

89.     Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "88" with the same force and effect as if fully set forth herein.

90.     To the extent Plaintiff suffers from a mental illness that results in an inability to

care for oneself Plaintiff qualifies as a person with an impairment that substantially limits one or

more of her major life activities, or in the alternative as an individual with a record of such

impairment.  Ms. Hailey Means' disability therefore constitutes a protected disability under the

Rehabilitation Act.

91.     Plaintiff's impairment required close monitoring by prison staff and/or peers.

92.     Defendant's intentional refusal to accommodate the needs of Plaintiff by, among

other things, failing to accommodate her mental health deficits and providing her with a deadly

instrument without any supervision was tantamount to a denial of services and programs

available to others that could have protected her from harming herself.  The failure to

accommodate Plaintiff's disabilities was intentional and/or deliberately indifferent to her rights

under § 504 and bore a causal link to her attempted suicides.

93.     As a consequence of Defendant's discriminatory treatment and lack of

accommodation, Plaintiff sustained injuries and is entitled to damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Violation of the Equal Protection Clause under 42 U.S.C. § 1983)

94.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs numbered "1" through "93" with the same force and effect as if fully set forth herein.

16

95.     The Defendants' conduct was tantamount to discrimination against Plaintiff based on her disability.  Other inmates under the care, custody and control of the City, who may be a danger to themselves or others, are presumably not permitted to possess deadly instruments and materials without proper supervision or allowed to be subjected to gratuitous beatings and sexual assaults by corrections officers.  This disparate treatment caused Plaintiff to inflict injury upon person.

96.     As a result of the foregoing, Plaintiff was deprived of her rights under the Equal Protection Clause of the United States Constitution and is thereby entitled to damages.

### AS AND FOR A SIXTH CAUSE OF ACTION
#### (Supervisory Liability under 42 U.S.C. § 1983)

97.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "96" with the same force and effect as if fully set forth herein.

98.     The supervisory Defendants personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees to prevent inmates who are suicidal or who have suicidal tendencies from harming themselves.

99.     As a result of this violation, Plaintiff was injured and is entitled to damages.

100.    As a result of the foregoing, Plaintiff Candie Hailey Means is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

### AS AND FOR A SEVENTH CAUSE OF ACTION
#### (Excessive Force under 42 U.S.C. § 1983)

101.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "100" with the same force and effect as if fully set forth herein.

102.     Defendant corrections officers Watson, Morgan, Terri, and John and Jane Does #1-10, use of force upon Plaintiff during the course of her incarceration at Rikers Island, as described herein, was objectively unreasonable and excessive.

103.     As a result of the foregoing, Plaintiff's rights secured under the United States Constitution, particularly the Fourth Amendment and 42 U.S.C. §1983 were violated by the individually-named Defendants under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and the City of New York, and under the authority of their position as law enforcement officers.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
(Municipal Liability under 42 U.S.C. § 1983)

104.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "103" with the same force and effect as if fully set forth herein.

105.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

106.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York included, but were not limited to confining mentally ill prisoners to solitary confinement without proper supervision and wellness monitoring.  Also, the City's policy of failing to prevent mentally ill inmates from committing or attempting to commit suicide, and to otherwise improperly supervise inmates with mental illness and/or histories of

suicide attempts.  Defendants have engaged in a pattern and practice of punitive segregation and excessive force by assaulting and placing Plaintiff and other mentally ill inmates in solitary confinement for prolonged and excessive periods of time, resulting in severe psychological and physical harm.  In addition, the City of New York engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of Plaintiff's rights as described herein.  As a result of the failure of the City of New York to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, Defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

107.    The aforementioned incident is not an isolated occurrence.  The Defendants were aware prior to the incident that its supervision of inmates with mental illness and suicidal histories or tendencies was inadequate.

108.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the DOC constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

109.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the DOC were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

110.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and DOC were the moving force behind the constitutional and statutory violations suffered by Plaintiff as alleged herein.

111.    As a result of the foregoing customs, policies, usages, practices, procedures and

19

rules of the City of New York and DOC, Plaintiff was impelled to harm herself.

112.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

113.    All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

        A.      To be free from deliberate indifference to his serious medical needs;

        B.      To be free from violation of the ADA;

        C.      To be free from violation of the Rehabilitation Act;

        d.      To receive equal protection of the law;

        C.      To be free from the failure to intervene;

        D.      To be free from supervisory and/or municipal liability;

**WHEREFORE**, Plaintiff CANDIE HAILEY MEANS demands judgment and prays for the following relief, jointly and severally, against the defendants:

    (A)     full and fair compensatory damages in an amount to be determined by a jury;

    (B)     punitive damages in an amount to be determined by a jury;

    (C)     attorney's fees under 42 U.S.C. §1988 and the costs and disbursements of this action; and

    (D)     such other and further relief as appears just and proper.

Dated: New York, New York
      October 2, 2017

                              THE COCHRAN FIRM
                              Attorneys for Plaintiffs

                              TRACEY L. BROWN (TB-4094)
                              DEREK S. SELLS (DS-8891)
                              55 Broadway, 23rd Floor
                              New York, NY 10006
                              Tel No.:  (212) 553-9215
                              Fax No.: (212) 227-8763
                              dsells@cochranfirm.com
                              tbrown@cochranfirm.com