UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CANDIE HAILEY MEANS

                        Plaintiff,                    Civil Action No. 17-cv-05375 (SHS)

-against-

CITY OF NEW YORK, et al.

                        Defendants.
----------------------------------------------------------------X

# EXHIBIT 1

Cite as: 592 U. S. ____ (2020)  1

Per Curiam

# SUPREME COURT OF THE UNITED STATES

## TRENT MICHAEL TAYLOR *v.* ROBERT RIOJAS, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 19–1261. Decided November 2, 2020

PER CURIAM.

Petitioner Trent Taylor is an inmate in the custody of the Texas Department of Criminal Justice. Taylor alleges that, for six full days in September 2013, correctional officers confined him in a pair of shockingly unsanitary cells.[1] The first cell was covered, nearly floor to ceiling, in "'massive amounts' of feces": all over the floor, the ceiling, the window, the walls, and even "'packed inside the water faucet.'" *Taylor* v. *Stevens*, 946 F. 3d 211, 218 (CA5 2019). Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage.

The Court of Appeals for the Fifth Circuit properly held that such conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment. But, based on its assessment that "[t]he law wasn't clearly established" that "prisoners couldn't be housed in

---

[1] The Fifth Circuit accepted Taylor's "verified pleadings [as] competent evidence at summary judgment." *Taylor* v. *Stevens*, 946 F. 3d 211, 221 (2019). As is appropriate at the summary-judgment stage, facts that are subject to genuine dispute are viewed in the light most favorable to Taylor's claim.

2                  TAYLOR *v.* RIOJAS

Per Curiam

cells teeming with human waste" "for only six days," the court concluded that the prison officials responsible for Taylor's confinement did not have "'fair warning' that their specific acts were unconstitutional." 946 F. 3d, at 222 (quoting *Hope* v. *Pelzer*, 536 U. S. 730, 741 (2002)).

   The Fifth Circuit erred in granting the officers qualified immunity on this basis. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau* v. *Haugen*, 543 U. S. 194, 198 (2004) (*per curiam*). But no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time. See *Hope*, 536 U. S., at 741 (explaining that "'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question'" (quoting *United States* v. *Lanier*, 520 U. S. 259, 271 (1997))); 536 U. S., at 745 (holding that "[t]he obvious cruelty inherent" in putting inmates in certain wantonly "degrading and dangerous" situations provides officers "with some notice that their alleged conduct violate[s]" the Eighth Amendment). The Fifth Circuit identified no evidence that the conditions of Taylor's confinement were compelled by necessity or exigency. Nor does the summary-judgment record reveal any reason to suspect that the conditions of Taylor's confinement could not have been mitigated, either in degree or duration. And although an officer-by-officer analysis will be necessary on remand, the record suggests that at least some officers involved in Taylor's ordeal were deliberately indifferent to the conditions of his cells. See, *e.g.,* 946 F. 3d, at 218 (one officer, upon placing Taylor in the first feces-covered cell, remarked to another that Taylor was "'going to have a long weekend'"); *ibid.,* and n. 9 (another officer, upon placing Taylor in the second cell, told

Taylor he hoped Taylor would "'f***ing freeze'").

Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement offended the Constitution.[2] We therefore grant Taylor's petition for a writ of certiorari, vacate the judgment of the Court of Appeals for the Fifth Circuit, and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BARRETT took no part in the consideration or decision of this case.

JUSTICE THOMAS dissents.

---

[2] In holding otherwise, the Fifth Circuit noted "ambiguity in the caselaw" regarding whether "a time period so short [as six days] violated the Constitution." 946 F. 3d, at 222. But the case that troubled the Fifth Circuit is too dissimilar, in terms of both conditions and duration of confinement, to create any doubt about the obviousness of Taylor's right. See *Davis* v. *Scott*, 157 F. 3d 1003, 1004 (CA5 1998) (no Eighth Amendment violation where inmate was detained for three days in dirty cell and provided cleaning supplies).

# SUPREME COURT OF THE UNITED STATES

TRENT MICHAEL TAYLOR *v.* ROBERT RIOJAS, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 19–1261. Decided November 2, 2020

JUSTICE ALITO, concurring in the judgment.

Because the Court has granted the petition for a writ of certiorari, I will address the question that the Court has chosen to decide. But I find it hard to understand why the Court has seen fit to grant review and address that question.

I

To see why this petition is ill-suited for review, it is important to review the procedural posture of this case. Petitioner, an inmate in a Texas prison, sued multiple prison officers and asserted a variety of claims, including both the Eighth Amendment claim that the Court addresses (placing and keeping him in filthy cells) and a related Eighth Amendment claim (refusing to take him to a toilet). The District Court granted summary judgment for the defendants on all but one of petitioner's claims under Federal Rule of Civil Procedure 54(b), which permitted petitioner to appeal the dismissed claims. On appeal, the Fifth Circuit affirmed as to all the claims at issue except the toilet-access claim. On the claim concerning the conditions of petitioner's cells, the court held that the facts alleged in petitioner's verified complaint were sufficient to demonstrate an Eighth Amendment violation, but it found that the officers were entitled to qualified immunity based primarily on a statement in *Hutto* v. *Finney*, 437 U. S. 678 (1978), and the Fifth Circuit's decision in *Davis* v. *Scott*, 157 F. 3d 1003 (1998).

2         TAYLOR v. RIOJAS

ALITO, J., concurring in judgment

The Court now reverses the affirmance of summary judgment on the cell-conditions claim. Viewing the evidence in the summary judgment record in the light most favorable to petitioner, the Court holds that a reasonable corrections officer would have known that it was unconstitutional to confine petitioner under the conditions alleged. That question, which turns entirely on an interpretation of the record in one particular case, is a quintessential example of the kind that we almost never review. As stated in our Rules, "[a] petition for a writ of certiorari is rarely granted when the asserted error consists of . . . the misapplication of a properly stated rule of law," this Court's Rule 10. That is precisely the situation here. The Court does not dispute that the Fifth Circuit applied all the correct legal standards, but the Court simply disagrees with the Fifth Circuit's application of those tests to the facts in a particular record. Every year, the courts of appeals decide hundreds if not thousands of cases in which it is debatable whether the evidence in a summary judgment record is just enough or not quite enough to carry the case to trial. If we began to review these decisions we would be swamped, and as a rule we do not do so.

Instead, we have well-known criteria for granting review, and they are not met here. The question that the Court decides is not one that has divided the lower courts, see this Court's Rule 10, and today's decision adds virtually nothing to the law going forward. The Court of Appeals held that the conditions alleged by petitioner, if proved, would violate the Eighth Amendment, and this put correctional officers in the Fifth Circuit on notice that such conditions are intolerable. Thus, even without our intervention, qualified immunity would not be available in any similar future case.

We have sometimes granted review and summarily reversed in cases where it appeared that the lower court had conspicuously disregarded governing Supreme Court precedent, but that is not the situation here. On the contrary,

Cite as: 592 U. S. ____ (2020) 3

ALITO, J., concurring in judgment

as I explain below, it appears that the Court of Appeals erred largely because it read too much into one of our decisions.

It is not even clear that today's decision is necessary to protect petitioner's interests. We are generally hesitant to grant review of non-final decisions, and there are grounds for such wariness here. If we had denied review at this time, petitioner may not have lost the opportunity to contest the grant of summary judgment on the issue of respondents' entitlement to qualified immunity on his cell-conditions claim. His case would have been remanded for trial on the claims that remained after the Fifth Circuit's decision (one of which sought relief that appears to overlap with the relief sought on the cell-conditions claim), and if he was dissatisfied with the final judgment, he may have been able to seek review by this Court of the cell-conditions qualified immunity issue at that time. *Major League Baseball Players Assn.* v. *Garvey*, 532 U. S. 504, 508, n. 1 (2001) (*per curiam*). And of course, there is always the possibility that he would have been satisfied with whatever relief he obtained on the claims that went to trial.

Today's decision does not even conclusively resolve the issue of qualified immunity on the cell-conditions claim because respondents are free to renew that defense at trial, and if the facts petitioner alleges are not ultimately established, the defense could succeed. Indeed, if petitioner cannot prove the facts he alleges, he may not be able to show that his constitutional rights were violated.

In light of all this, it is not apparent why the Court has chosen to grant review in this case.

II

While I would not grant review on the question the Court addresses, I agree that summary judgment should not have been awarded on the issue of qualified immunity. We must

view the summary judgment record in the light most favorable to petitioner, and when petitioner's verified complaint is read in this way, a reasonable fact-finder could infer not just that the conditions in the cells in question were horrific but that respondents chose to place and keep him in those particular cells, made no effort to have the cells cleaned, and did not explore the possibility of assignment to cells with better conditions. A reasonable corrections officer would have known that this course of conduct was unconstitutional, and the cases on which respondents rely do not show otherwise.

Although this Court stated in *Hutto* that holding a prisoner in a "filthy" cell for "a few days" "might be tolerable," 437 U. S., at 686–687, that equivocal and unspecific dictum does not justify what petitioner alleges. There are degrees of filth, ranging from conditions that are simply unpleasant to conditions that pose a grave health risk, and the concept of "a few days" is also imprecise. In addition, the statement does not address potentially important factors, such as the necessity of placing and keeping a prisoner in a particular cell and the possibility of cleaning the cell before he is housed there or during the course of that placement. A reasonable officer could not think that this statement or the Court of Appeals' decision in *Davis* meant that it is constitutional to place a prisoner in the filthiest cells imaginable for up to six days despite the availability of other preferable cells or despite the ability to arrange for cleaning of the cells in question.

For these reasons, I concur in the judgment.